The Honorable Daniel F. DeLoach City of Hialeah Clerk 501 Palm Avenue Hialeah, Florida 33010-4789
Dear Mr. DeLoach:
You have asked the following question:
Is it permissible to provide photocopies of the actual optically scanned ballots cast in a municipal election to comply with a public records request filed under Chapter 119, Florida Statutes?
Initially, it is assumed that the ballots requested have been cast in the election and that the procedures attendant to counting the ballots and certifying the election results have been completed. Questions that implicate the potential disruption of the election process prescribed by the Florida Election Code would more appropriately be addressed to the Division of Elections in the Department of State.
The general policy of this state, recognized in Florida law and the state Constitution, is that records of the state and local governments shall be open for inspection by any person.[1] Pursuant to section 119.07(1)(a), Florida Statutes, every person having custody of a public record "shall permit the record to be inspected and examined by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervision by the custodian of the public record or the custodian's designee."
The statute further provides that the custodian "shall furnish a copy or a certified copy of the record upon payment of the fee prescribed by law . . . ."[2] In instances where the nature or volume of a public record is such as to require extensive use of information technology resources or extensive clerical or supervisory assistance by personnel of the agency involved, or both, the agency may charge, in addition to the actual cost of duplication, a special service charge based upon the cost incurred for the use of the technology resources or personnel.[3]
Section 119.07(1)(c), Florida Statute, provides:
"When ballots are produced under this section for inspection or examination, no persons other than the supervisor of elections or the supervisor's employees shall touch the ballots. The supervisor of elections shall make a reasonable effort to notify all candidates by telephone or otherwise of the time and place of the inspection or examination. All such candidates, or their representatives, shall be allowed to be present during the inspection or examination."[4]
While section 119.07(1)(c), Florida Statutes, places restrictions on who may handle the ballots, it does not remove the ballots from the inspection requirement of section 119.07(1), Florida Statutes. Nor am I aware of any provision restricting full inspection or copying of the ballots other than the restriction contained in section 119.07(1)(c), Florida Statutes, that no persons other than the supervisor of elections or his or her employees may touch the ballots.[5] This office has previously stated that a custodian of public records may not impose a rule or condition on inspection that operates to restrict or circumvent a person's right of access.[6]
Only those public records that are provided by law to be confidential or that are prohibited from being inspected by the public, whether by general or special law, are exempt from the disclosure provisions of section 119.07(1), Florida Statutes.[7] I am not aware of, nor have you drawn my attention to, any provision of law that makes ballots or ballot stubs confidential or exempt from disclosure.
A review of the legislative history of the enactment of section119.07(1)(c), Florida Statutes, shows a concern for the handling of voted punch card ballots, which in 1985 represented "new" voting technology. In explaining the need for restricting who may touch voted punch cards, it was stated that such cards could easily be altered or damaged, thus making it important to "maintain the integrity of the voted ballot, so there can be no change of the will of the people."[8] In this instance, the ballots are optically scanned and do not utilize the same technology as punch cards.
During the 2000 election and subsequent judicial proceedings arising from requests for recounts of the ballots, the courts of this state were asked to allow ballots to be rerun through optical scanners in order to segregate overvoted or undervoted ballots. In Sentinel Communications, Inc., v. Anderson,[9] the supervisor of elections argued that rescanning the ballots and segregating those requested by the newspaper could result in "ballot degradation." The court rejected the supervisor's argument and concluded that "[t]he limited evidence offered by the Supervisor of the possibility of degradation of the ballots failed to show that the alleged degradation would be other than de minimus."[10] This office has not been provided with any evidence that photo copying would damage or potentially alter optically scanned ballots.
It is clear that the Legislature has addressed the sensitive nature of voted ballots by restricting the handling of such to the supervisor of elections or the supervisor's employees. Absent a legislative or constitutional provision prohibiting or exempting voted ballots from being copied, however, such a restriction does not preclude the designated persons from copying optically scanned ballots to comply with a public records request pursuant to Chapter 119, Florida Statutes.
Sincerely,
Charlie Crist Attorney General
CC/tls
[1] Section 119.01(1), Fla. Stat., and Art. I, s. 24(a), Fla. Const. 
[2] Section 119.07(1)(a), Fla. Stat.
[3] Section 119.07(1)(b), Fla. Stat.
[4] See also s. 101.572, Fla. Stat., providing:
"The official ballots and ballot cards received from election boards and removed from absentee ballot mailing envelopes shall be open for public inspection or examination while in the custody of the supervisor of elections or the county canvassing board at any reasonable time, under reasonable conditions; however, no persons other than the supervisor of elections or his or her employees or the county canvassing board shall handle any official ballot or ballot card. The supervisor of elections shall make a reasonable effort to notify all candidates whose names appear on such ballots or ballot cards by telephone or otherwise of the time and place of the inspection or examination. All such candidates, or their representatives, shall be allowed to be present during the inspection or examination."
[5] Cf., Op. Att'y Gen. 93-48 (1993) (individual or group is entitled to inspect ballots and take notes regarding the number of votes cast; however, no person other than supervisor or supervisor's employees may touch ballots).
[6] See Ops. Att'y Gen. Fla. 75-50 (1975) (local agency has no discretion to alter Ch. 119 requirements as state possesses exclusive control over access, maintenance, retention and disposal of public records); 92-09 (1992) (utilities commission not authorized to alter terms of Ch. 119, Fla. Stat.). And seeTribune Company v. Cannella, 458 So.2d 1075, 1077 (Fla. 1984) (local enactment or policy dictating additional conditions or restrictions on access to public records is of dubious validity since legislative scheme of Public Records Act preempts any local regulation of subject).
[7] Section 119.07(2)(a), Fla. Stat. and Art. I, s. 24, Fla. Const. 
[8] Senate Judiciary Civil Committee, May 21, 1985, Rep. Morse discussing HB 553.
[9] Case No. 01-48 CA-SW, 12th Judicial Circuit in and for Charlotte County, January 19, 2001.
[10] Id. p. 7.